E-FILED
Friday, 28 August, 2026 04:39:26 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **CHASE HADEZ a/k/a COLTON LEXUS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-cv-3224** |
| | ) | |
| **CITY OF SPRINGFIELD IN THE STATE OF ILLINOIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Plaintiff Chase Hadez a/k/a Colton Lexus filed a pro se Complaint under 42 U.S.C. § 1983 asserting Defendant City of Springfield ("City") violated his First Amendment rights to practice his religion in his home when the City of Springfield determined Plaintiff's home violated its zoning and building ordinances. (Doc. 1). Plaintiff has filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction and an Amended Emergency Motion for Temporary Restraining Order and Preliminary Injunction.[1] (Docs. 3, 7). For the reasons that follow, Plaintiff's Motions are hereby denied.

[1] Because Defendant City of Springfield has received notice and responded to Plaintiff's motions, the Court will construe Plaintiff's filings as a request for a preliminary injunction. *See* Fed. R. Civ. P. 65(a); *Sampson v. Murray*, 415 U.S. 61, 86-88 (1974).

## I. BACKGROUND

Plaintiff seeks a preliminary injunction granting him emergency occupancy of his property at 1705 E. Carpenter Street, Springfield, Illinois, and enjoining Defendant from enforcing the July 23, 2026 preliminary injunction entered by Sangamon County Circuit Judge Schmidt in Case Number 26-CH-43, ordering Plaintiff to cease residing in, occupying, or otherwise using the structures on the property. Plaintiff contends that enforcement of the order requires removal of the unit, which violates Plaintiff's right to worship in his home and substantially burdens his free exercise of religion. (*Id.*)

Plaintiff argues that by enforcing the state court injunction, the City's actions deprive him of personal property and liberty interests without due process of law in violation of the Fourteenth Amendment. Additionally, he contends the City's land-use regulation and injunction impose a substantial burden on Plaintiff's religious exercise in violation of the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA).

In his Amended Motion for a Preliminary Injunction, Plaintiff claims he is an adherent of the Celestican Church of Christ and holds sincere religious beliefs that require him "to live off-grid in a faith-based tiny-home or POD structure on real property that he owns or controls." (Doc. 7). Plaintiff states that Scripture teaches him Jesus was a carpenter and he acquired the vacant lot at 1705 E. Carpenter Street as an "intentional act of religious exercise and devotion." (*Id.*) Plaintiff is allegedly homeless due to the state court injunction and order.

Attached to the City's Response is the Affidavit of John Harris, the Zoning Administrator for the City. (Doc. 10-2). Harris states the property is zoned as Residential R-2, whereby a structure used for habitation must meet the City Code's definition of dwelling unit by having a kitchen and bathroom. (*Id.* at ¶ 5-6). The structure at 1705 E. Carpenter has neither a kitchen nor a bathroom and thus does not meet the definition of a dwelling unit. (*Id.* at ¶ 7). Harris states that an outside water bottle and dishwashing unit does not adequately comprise a kitchen and an outhouse does not adequately comprise a bathroom. (*Id.* at ¶ 8). The property at 1705 E. Carpenter does not have active water and utility services. (*Id.* at 9).

The City also submits the Affidavit of Building Code Official Mitchell Flynn, who states that neither of the two structures on Plaintiff's property have active utilities. (Doc. 10-3, ¶¶ 1, 5). The City Code provides that a dwelling without active utilities is unsafe to live in. (*Id.* at ¶ 6). City Code 170.16.13(h) defines an unsafe and dangerous structure as one that lacks sanitary services "or otherwise, is determined by a building inspector or housing inspector to be unsanitary, unfit for human habitation, or in a condition that is likely to cause sickness or disease." (*Id.* at ¶ 10). A structure without water, sewage, electric, or other utilities that keeps people clean, safe from extreme temperatures, and adheres to structural safety concerns is one that has been determined by City building and inspectors to be unsafe. (*Id.* at ¶ 11). Flynn concluded Plaintiff's structures have the following Code violations: 1) habitable rooms need to be at least 70 square feet; 2) no toilets; 3) no kitchen; 4) no connection to a sewage system; 5) no running hot and cold water; and 6) no smoke alarms. (*Id.* at ¶ 9). Based on the foregoing, Flynn concluded that

the structures on the property at 1705 E. Carpenter are not safe to live in. (*Id.* at ¶ 12). Pursuant to City Code 170.16.14, individuals are not permitted to live in unsafe and dangerous structures. (*Id.* at ¶ 13).

Plaintiff asks the Court to issue a preliminary injunction enjoining the City from enforcing the state court preliminary injunction to the extent it prohibits Plaintiff from living in, occupying, or using the POD or structures on his property at 1705 E. Carpenter Street. (Doc. 7). Consistent with the RLUIPA and the First Amendment, Plaintiff seeks restoration of his access to and occupancy of the structures at 1705 E. Carpenter Street and a declaration that the City's land-use enforcement actions and the resulting state court injunction substantially burden Plaintiff's religious exercise in violation of RLUIPA and the Free Exercise Clause. (*Id.*)

## II. DISCUSSION

Plaintiff contends he is likely to succeed on the merits because the state court injunction forced him to abandon occupancy of the structures where he practices his religion or face homelessness. Even if the City has a compelling interest in health and safety, an outright ban on occupancy is not the least restrictive means. In balancing the harms, Plaintiff argues the City faces no comparable immediate harm from allowing Plaintiff to occupy his home while this case is pending. Finally, Plaintiff contends that the public interest favors the vindication of his federally protected religious exercise rights and civil rights.

**A. Legal Standard**

To obtain preliminary injunctive relief, a plaintiff must show that (1) its underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) it will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the court then must balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Under the sliding scale approach, the greater the plaintiff's likelihood of success on the merits, the less the balance of harms needs to weigh in his favor in order to obtain an injunction. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 n.3 (7th Cir. 1992). If the balance of harms weighs more heavily in plaintiff's favor, the likelihood of success need not be as great. *Id.* "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

**B. Analysis**

"The Free Exercise Clause of the First Amendment protects an individual's religious exercise . . . requir[ing] even facially neutral laws that incidentally burden religious exercise to survive strict scrutiny." *Childs v. Webster*, 168 F.4th 1020, 1024 (7th Cir. 2026). "[A] land use regulation is defined as a regulation that restricts a claimant's ability to use land in which he holds a property interest." *Taylor v. City of Gary*, 233 F. Appx. 561, 562 (7th Cir. 2007) (citing 42 U.S.C. § 2000cc-5(5)). RLUIPA provides greater

protection to religious exercise than does the First Amendment. *Holt v. Hobbs*, 574 U.S. 352, 361-62 (2015). Under RLUIPA, a government entity may not impose a land-use regulation that substantially burdens religious exercise unless it demonstrates that the burden (1) furthers a compelling governmental interest and (2) is the least restrictive means of furthering that interest. 42 U.S.C. § 2000CC(a)(1). The statute protects the use of real property used for the purpose of religious exercise. 42 U.S.C. § 2000cc-5(7)(A)-(B).

"In order to prevail on a claim under the substantial burden provision, a plaintiff must first demonstrate that the regulation at issue actually imposes a substantial burden on religious exercise." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003). The Seventh Circuit held, with respect to "RLUIPA's broad definition of religious exercise, a land-use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise—including the use of real property for the purpose thereof within the regulated jurisdiction generally—effectively impracticable." *Id.* at 761. It does not constitute a substantial burden to an individual's free exercise of religion if a regulation merely serves to make the practice of his religious beliefs more expensive. *Id.* at 761-62. While RLUIPA affords legitimate protections to religious exercise, that does not mean that religious land use is exempt from land-use regulations. *Id.* at 762. Religious land uses simply must be on equal footing with nonreligious land uses. *Id.* Because then-recent amendments to the Chicago Zoning Ordinance had served to treat religious structures equally to nonreligious assembly uses, the Seventh Circuit determined that the ordinance complied with RLUIPA's nondiscrimination provision. *Id.*

As the City of Springfield alleges, the City's Zoning and Building Codes are facially neutral ordinances that pertain to public safety, welfare, and the single family nature of the residence. The ordinance does not treat Plaintiff's exercise of his religion differently from any other activity that he might do in his home. For example, Plaintiff cannot use the Carpenter Street dwelling as a home office or to operate a business while living there. The City is not simply prohibiting Plaintiff from exercising his faith at the property. It is prohibiting him from doing anything at the property while residing there based on health and safety concerns. If Plaintiff's home was built in compliance with the City's Codes, the City would not be seeking to enjoin Plaintiff from living on the property and Plaintiff could practice his religion at his home. Plaintiff has not shown how a structure that meets the City's Code would substantially burden his religious practice. The fact that he might incur significant costs in bringing his property up to code is not enough to show that the regulation imposes a substantial burden on Plaintiff's religious exercise. *See Civil Liberties*, 342 F.3d at 762.

Because Plaintiff cannot meet his initial burden of showing that the regulation imposes a substantial burden on religious exercise, he cannot establish a likelihood of success on the merits and the Court need not consider whether Plaintiff is likely to suffer irreparable harm, balance the equities, or examine whether an injunction is in the public interest. The Court further finds there are no factual disputes which warrant conducting an evidentiary hearing. *See, e.g., Dexia Credit Local v. Rogan*, 602 F.3d 879, 884 (7th Cir. 2010) ("[T]he court need not conduct an evidentiary hearing unless one is called for as a result of a fact issue created by the response to a motion for a preliminary injunction.").

## III. CONCLUSION

Accordingly, Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 3) and Amended Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 7) are DENIED.

ENTER: August 28, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE